IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00061-PAB-SKC

SILEX WEST, LLC,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF SUMMIT COUNTY, COLORADO,

      Defendant.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) [Docket No. 8] filed by defendant. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

This case arises out of a land dispute. Defendant is the governing body of Summit County, Colorado, a subdivision of the State of Colorado, with policy-setting, regulatory, and zoning powers. Docket No. 1 at 1, ¶ 2. Plaintiff owns two parcels of land (the "subject property") in Summit County, Colorado. *Id.* at 2, ¶ 6. Each parcel is approximately ten acres in size and is forested and has been unimproved since the parcel's creation. *Id.* at 2–3, ¶¶ 7–8.

At the time plaintiff acquired the subject property, both parcels were zoned "A-1

---

[1] The following facts are taken from plaintiff's complaint, Docket No. 1, and are assumed to be true for the purposes of resolving this motion.

(Agricultural)," which provides that "[r]esidential densities are limited to no more than one (1) primary dwelling unit/20 acres" and that "[w]ith the exception of approved rural land use subdivisions, each primary dwelling unit shall be located on a separate lot of at least 20 acres." *Id.* at 3, ¶¶ 9–11 (quoting Ordinance § 3301.01).

Plaintiff acquired the subject property in May 2015 from the estate of Eugene L. Facetti. *Id.*, ¶ 12. Mr. Facetti acquired the land in 1960 from the original developers, who subdivided the subject property and other lots, all of which range in size from five to ten acres, from a larger tract that was part of a mining patent. *Id.* at 4, ¶¶ 13–14. The subject property and adjacent parcels were to be part of a residential development. *Id.*, ¶ 15.[2] In June 1969, Summit County adopted its zoning regulations and applied an A-1 (Agricultural) classification to the subject property, despite the previous development or subdivision of the subject property and surrounding parcels for residential purposes and the subject property and surrounding parcels being less than 20 acres in size. *Id.* at 4–5, ¶¶ 16–17, 19.

Although the subject property was created prior to Summit County's enactment of zoning, defendant has maintained that any "new" use of the subject property, such as a residence, requires approval through the Non-Conforming Parcel Plan Review and Approval ("Non-Conforming Parcel Plan") process. *Id.* at 5, ¶ 20.

Plaintiff contends that, because the subject property existed in its current form prior to the zoning regulation, the lots are "legal, non-conforming or 'grandfathered'

---

[2] The deeds for both parcels say, "[t]he only improvement to be constructed by any property owner, whether the present owners or anyone holding under them, shall be a cabin or house for use only as a mountain home . . . limited to one cabin for each two acres." Docket No. 1-3 at 2, 4.

2

parcels as to any and all aspects inconsistent to the zoning ordinance enacted in 1969 and any time subsequent thereto," and plaintiff should not have to obtain review and approval of a non-conforming parcel plan for residential purposes or for uses beyond those permitted in the A-1 standard but not otherwise excluded in the zoning ordinance. *Id.* at 5–6, ¶¶ 21–23. Plaintiff believes the subject property consists of legal and conforming parcels for all uses permitted in the A-1 classification, *id.* at 6, ¶ 24, but contends that defendant has prevented plaintiff from using the subject property for agricultural purposes because defendant's position is that agricultural use of the subject property constitutes a "new" use requiring Non-Conforming Parcel Plan approval. *Id.*, ¶¶ 25–26. As a result, plaintiff argues that defendant has deprived plaintiff of its right to possess, use, and dispose of its property, thereby constituting a taking under the Fifth and Fourteenth Amendments. *Id.* 6–7, ¶¶ 27–29.

## II. LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the

3

complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). The court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

Prudential ripeness, however, is analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than Rule 12(b)(1) because it does not implicate subject matter jurisdiction. *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021) (citing *VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 n.4 (10th Cir. 2017); *Kerr v. Polis*, 930 F.3d 1190, 1194 (10th Cir. 2019) ("Plaintiffs argue that in light of the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014), the district court erred in examining these prudential concerns on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. We agree."); *Sherman v. Town of Chester*, 752 F.3d 554, 560–61 (2d Cir. 2014) (analyzing takings case ripeness under Rule 12(b)(6)); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (same)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the

4

facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Ins.*, 584 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

Defendant moves to dismiss plaintiff's takings claim on the basis that the claim is not ripe. Docket No. 8 at 7–9. Defendant's primary argument is that plaintiff has not submitted a land use application through the Non-Conforming Parcel Plan process or sought appeals or variances. *Id.* at 2. As a result, the county has not rendered a final decision that would permit plaintiff to file a takings claim. *Id.*

"Ripeness doctrine draws 'both from Article III limitations on judicial power and prudential reasons for refusing to exercise jurisdiction.'" *N. Mill St.*, 6 F.4th at 1224 (quoting *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018) (quotations omitted)). "Article III and prudential ripeness are both 'concerned with whether a case has been brought prematurely, but they protect against prematureness in different ways and for different reasons.'" *Id.* (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003)).

A regulatory takings claim is not ripe "until the government entity charged with implementing [zoning] regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–87 (1985).[3] The Supreme Court recently reaffirmed that, "[w]hen a plaintiff alleges a taking in violation of the Fifth

---

[3] In *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162 (2019), the Supreme Court overruled the *Williamson County* "state-litigation requirement," which required a property owner to bring a claim for just compensation under state law in state court before bringing a federal takings claim in federal court. However, the remainder of *Williamson County* remains good law. *Id.* at 2169 (noting that "the validity of [the] finality requirement . . . is not at issue"). *Knick* does not overrule the requirement that a property owner must obtain a final decision before bringing a § 1983 takings claim in federal court, as the Tenth Circuit recently explained. *See N. Mill St.*, 6 F.4th at 1225.

Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of S.F.*, 141 S. Ct. 2226, 2228 (2021) (per curiam).

This finality requirement "seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review." *Bateman v. City of West Bountiful*, 89 F.3d 704, 707 (10th Cir. 1996). "A 'final decision' requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question." *SK Fin. SA v. La Plata County, Board of Cnty. Comm'rs*, 126 F.3d 1272, 1276 (10th Cir. 1997). Put differently, the finality requirement is satisfied when "there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 141 S. Ct. at 2230. "[A] plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id.* at 2231. "The ripeness requirement . . . applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim." *Bateman*, 89 F.3d at 709.

The parties agree that the subject property does not conform to the twenty-acre minimum lot size for A-1 zoning and are therefore legal non-conforming parcels. *See* Docket No. 8 at 8; Docket No. 17 at 1 n.1.[4]  They appear to disagree on how plaintiff wants to use the land. Defendant states that plaintiff, at one point, sought to build a

---

[4] The Summit County Land Use Development Code states, "[a]ny parcel in existence on June 2, 1969, the size of which became nonconforming as a result of the County's adoption of Zoning Regulations on June 2, 1969 . . . shall be deemed a legal nonconforming parcel for zoning purposes." Ordinance § 14101.01.

barn and now seeks to build a residence. Docket No. 8 at 3. Plaintiff states that it only seeks to use the subject property for uses "permitted by the County's own agricultural zoning ordinance (private timbering and the construction of a private barn)." Docket No. 17 at 2.

For properties like plaintiff's, the county has developed a Non-Conforming Parcel Plan process to review proposed uses that a substandard-size lot owner may wish to pursue on its property. Docket No. 8 at 8. Defendant argues that plaintiff's Fifth Amendment claim is not ripe because plaintiff has not availed itself of the review process, which process could result in the approval of the exact uses that plaintiff seeks. *Id.* at 7–8. In addition, plaintiff could pursue a variance, *id.* at 8–9, a process that allows the county to "soften its restrictions" after a landowner demonstrates that the zoning code has resulted in the "denial of all reasonable use of its property." *Id.* at 3–4. Because it chose not to appeal a prior adverse decision from the county when it applied to build a barn and has not followed the variance process, defendant contends that plaintiff cannot show that its property was taken. *Id.* at 9. Moreover, as to plaintiff's invoking the Fourteenth Amendment, defendant argues that the Tenth Circuit has applied the same ripeness requirements to Fourteenth Amendment claims "that rest upon the same facts as a concomitant takings claim." *Id.* (quoting *Bateman*, 89 F.3d at 709).

Plaintiff argues that the county has deprived it of all economically beneficial and productive uses of its property. Docket No. 17 at 1. Plaintiff states that it began engaging in agricultural activity on the subject property, as permitted in the zoning ordinance, yet the county stopped plaintiff from doing so until plaintiff receives approval

from the Non-Conforming Parcel Plan process.  *Id.* at 2.  Plaintiff insists that it does not need to follow this process because it is "not developing or seeking a new use of its properties."  *Id.*  The county's deprivation of all economically beneficial uses of the subject property constitutes a taking under the Fifth Amendment, plaintiff argues, and plaintiff's claim is ripe because a Fifth Amendment violation occurs as soon as the government takes a property for public use without paying for it.  *Id.* at 10 (citing *Knick*, 139 S. Ct. at 2170).

### A.  Article III Ripeness

"If a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied."  *N. Mill St.*, 6 F.4th at 1229 (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012)(quotations and alteration omitted)).  "Article III standing requires the plaintiff to 'have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Id.* (quoting *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical."  *Id.* (quoting *Baker*, 979 F.3d at 871 (quotations omitted)).

The Court finds that plaintiff had adequately alleged that it suffered an economic injury that is fairly traceable to defendant's actions.  Plaintiff has alleged that defendant has prevented plaintiff from using the subject property for permissible agricultural

9

purposes, despite the subject property being zoned as agricultural, and that defendant's position that agricultural use constitutes a "new" use requiring a non-conforming parcel plan has diminished plaintiff's ability to possess, use, and dispose of its property. *See* Docket No. 1 at 6–7, ¶¶ 24–29. In *North Mill Street*, the Tenth Circuit noted that the Supreme Court has "routinely recognized that a likelihood of economic injury resulting from governmental action that changes market conditions is sufficient to satisfy Article III justiciability requirements." 6 F.4th at 1229 (citing *Clinton v. City of N.Y.*, 524 U.S. 417, 432–33 (1998)). The Court therefore finds that plaintiff has plausibly alleged that its claims are constitutionally ripe.

### B.  Prudential Ripeness

As the court in *North Mill Street* noted, "*Williamson County* requires 'nothing more than *de facto* finality.'" 6 F.4th at 1230 (quoting *Pakdel*, 141 S. Ct. at 2230). A plaintiff may show *de facto* finality by showing (1) "the agency lacks the discretion to permit any development," or (2) "the permissible uses of the property are known to a reasonable degree of certainty." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). The finality requirement does not require landowners to exhaust administrative procedures, or to "submit applications for their own sake," *id.* at 621, but does require that a "final decision" has been reached. *Pakdel*, 141 S. Ct. at 2230. This is because a regulatory takings claim becomes prudentially ripe for judicial resolution "[o]nce the government is committed to a position." *Id.* In other words, a landowner must show "that pursuit of further administrative relief would be futile would satisfy the finality requirement." *N. Mill St.*, 6 F.4th at 1230.

In *Bateman*, the city recorded the plaintiff's property as noncompliant with the city's building ordinance, which effectively prevented the plaintiff from selling a portion of the property. 89 F.3d at 705–06. The plaintiff subsequently filed a lawsuit rather than seeking a variance from the city's board of adjustment. *Id.* at 706. The Tenth Circuit affirmed the dismissal of the plaintiff's Takings Clause claim for ripeness on the basis that the plaintiff "fail[ed] to seek review of the City's action under the procedures authorized by state law." *Id.* Although the city determined that the plaintiff's current use did not comply with the city's zoning ordinance, that determination was not "conclusive" because it left open the possibility that plaintiff could "obtain[ ] a variance from the board of adjustment." *Id.* at 708 (citing *Williamson Cnty.*, 473 U.S. at 194). Because there was not "a conclusive determination of the property's status," the plaintiff failed to show that a final decision had been reached. *Id.* at 707. Similarly, in *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989), *abrogated in part by Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999), the Tenth Circuit concluded that the plaintiff's Takings Clause claim was not ripe because the city had "neither indicated definitively what level of development will be allowed on [the plaintiff's] property, nor finally and officially ruled out the possibility that [the plaintiff] will be able to proceed with its original plans." 874 F.2d at 721.[5] The Tenth Circuit noted that the claim would not be ripe until the plaintiff was "in a position to allege not only that its initial permit applications were denied, but also that it has made some effort to

---

[5] *Federal Lands Legal Consortium* abrogated a portion of *Landmark Land*'s analysis regarding a procedural due process claim, leaving the Takings Clause analysis untouched. *See Fed. Lands Legal Consortium*, 195 F.3d at 1195; *see also SK Fin.*, 126 F.3d at 1277 (approvingly citing *Landmark Land*'s Taking Clause holding).

pursue compromise . . . that would allow some level of development." *Id.*

The Court thus finds that plaintiff has failed to establish that a final decision has been reached that would meet the prudential ripeness requirements. Although defendant denied an earlier permit to build a private barn, Docket No. 17 at 12, which plaintiff still wishes to construct, the facts do not indicate that plaintiff appealed this denial, sought a zoning variance, or availed itself of the review process. *See Willan v. Dane Cnty.*, 2021 WL 4269922, at *3 (7th Cir. Sept. 20, 2021) (unpublished) (affirming dismissal where plaintiffs had not shown "that they took any of the directed steps to obtain a zoning variance or a conditional-use permit, or that anyone at the County ever reached a final decision on whether a variance or permit would be approved if properly sought"). In fact, plaintiff views the variance process as "irrelevant." *Id.* at 9. Nor is it clear that plaintiff's denied barn application could show that there has been a final action with respect to the other uses that plaintiff's is interested in. *See N. Mill St.*, 6 F.4th at 1234 ("a final decision generally requires 'an initial rejection of a *particular* development proposal,' and a 'definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question'" (quoting *SK Fin.*, 126 F.3d at 1276 (quoting *Landmark Land*, 874 F.2d at 720)); *see also MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 353 n.9 (1986).

As a result, plaintiff's claim has not ripened to the point of there being "a conclusive determination of the property's status." *See Bateman*, 89 F.3d at 707. Plaintiff has failed to allege that "its initial permit applications were denied [and] that it has made some effort to pursue compromise . . . that would allow some level of

development." *See Landmark Land*, 874 F.2d at 721.  It has not shown that "the permissible uses of the property are known to a reasonable degree of certainty," *Palazzolo*, 533 U.S. at 620, or that pursuing further administrative procedures is unnecessary because defendant "has dug in its heels and made clear that all such applications will be denied."  *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005).  Indeed, nowhere in its complaint does plaintiff indicate that it has submitted a specific plan for the subject property to defendant that would allow for the pursuit of a compromise.  As such, because other "avenues still remain for the government to clarify or change its decision" the Court finds plaintiff's claim is not prudentially ripe.  *See Pakdel*, 141 S. Ct. at 2231.

Plaintiff insists that it should not have to follow these processes because it is not seeking to use the subject property in a new way.  It only intends to use the property for agriculture, "such as private timbering and the construction of a private barn," which is consistent with the agricultural zoning ordinance.  Docket No. 17 at 11.  Yet plaintiff concedes that the subject property has always been forested and unimproved, *id.*, and there is no evidence that the property has ever been used for agriculture or that there is any structure on the land.  Plaintiff appears to contend that the zoning code is not applicable to the continuance or expansion of legal uses in place at the time the county adopted the code.  *Id.* at 13–14.  But plaintiff is not simply continuing or expanding existing uses because the land has never been used for agriculture.  Moreover, plaintiff provides no allegations or authority to establish timbering and the construction of a private barn constitute a "legal use[] and structure[] in place at the time a lot became a

13

legal nonconforming parcel" or an "expansion of an existing use."  See Ordinance §§ 14101.02(A), (B).  Instead, timbering and the construction of a barn appears to be a new use that would require approval.  See id., § 14101.02(C) ("Approval of a nonconforming parcel plan review . . . must be obtained prior to the establishment of any new use on a legal nonconforming parcel. . . . Any new use shall conform to the Zoning Regulations in effect at the time the use is established.").

Plaintiff relies on *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).  Docket No. 17 at 8–9.  This reliance is misplaced.  The South Carolina Supreme Court in *Lucas* declined to review the case on ripeness grounds, yet the respondent made similar arguments as the defendant in this case, i.e., that the plaintiff had not obtained a final decision and so was "not yet entitled to definitive adjudication of his takings claim in this Court."  *Lucas*, 505 U.S. at 1011.  The United States Supreme Court held that the respondent's arguments "would preclude review *had the South Carolina Supreme Court rested its judgment on ripeness grounds*," but instead the South Carolina court "shrugged off the possibility of further administrative and trial proceedings . . . preferring to dispose of Lucas's takings claim on the merits."  *Id.* (emphasis added).  Here, however, the matter is before the Court on a ripeness challenge to plaintiff's takings claim.  Additionally, while the state created a discretionary "special permit" process after Lucas initiated his lawsuit and prevailed in the lower court, the Court held that insisting that Lucas pursue the special permit process before his claim could be considered ripe would not "accord with sound process."  *Id.* at 1012–13.  This is not the situation here.  The county did not create the Non-Conforming Parcel Plan process during the litigation.

14

Moreover, *Lucas* is also factually distinguishable. In *Lucas*, the petitioner landowner was subject to a state law that completely eliminated any possibility of building on his land in an effort to preserve the South Carolina coastline. *Id.* at 1007. The Court noted that the law had the "direct effect of barring petitioner from erecting any permanent habitable structures." *Id.* Here, there is no similar resolution determining with any amount of finality how plaintiff can use the subject property. *Lucas*, therefore, is not dispositive.

Plaintiff also relies on *Palazzolo* to support its argument that *Williamson County*'s finality requirement no longer applies. Docket No. 17 at 9–10. As discussed previously, however, the Supreme Court and Tenth Circuit have made clear that the finality requirement, required for a claim to be prudentially ripe, still exists. In addition, in *Palazzolo*, the Court described the finality requirement as requiring a landowner to "follow[] reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, *including the opportunity to grant any variances or waivers allowed by law*." 533 U.S at 620–21 (emphasis added). Notably, in *Palazzolo*, the Court deemed the plaintiff's claim ripe after he had two separate development applications for his property rejected by the applicable regulatory agency. *Id*. at 614–15. In this case, plaintiff declined to proceed through the Non-Conforming Parcel Plan process or another process that would give defendant the opportunity to grant a variance for a specific development plan. Thus, *Palazzolo* does not indicate that plaintiff's claim is prudentially ripe; it teaches the exact opposite.

Because the Fifth Amendment takings claim is not prudentially ripe, plaintiff's other arguments also fail. An equal protection or substantive due process claim "rest[s] upon the same facts" as a takings claim; thus, the ripeness requirement applies and plaintiff's Fourteenth Amendment arguments. *See Bateman*, 89 F.3d at 709 (collecting cases); *see also N. Mill St.*, 6 F.4th at 1234–35 (dismissing additional claims based on "the same constitutional violations, but seek[ing] a different remedy").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) [Docket No. 8], construed as a motion pursuant to Fed. R. Civ. P. 12(b)(6), is **GRANTED**. It is further

**ORDERED** that plaintiff's claim is **DISMISSED without prejudice**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File Surreply [Docket No. 19] is **DENIED as moot**. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 30, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge